```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF PENNSYLVANIA
                                    )
                                    )
PAULEEN WISE,                       )
                                    )
                                    )   CIVIL ACTION NO. 06-1341
           Plaintiff,               )
                                    )
                                    )
      v.                            )
                                    )
                                    )
MICHAEL J. ASTRUE,                  )   JUDGE DAVID S. CERCONE
Commissioner of Social              )   MAGISTRATE JUDGE CAIAZZA
Security,                           )
                                    )
                                    )
           Defendant.               )
                                    )
```

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

Acting pursuant to 42 U.S.C. § 405(g), Pauleen Wise ("Wise" or "the claimant") appeals from a final decision of the Commissioner of Social Security ("the Commissioner") that Wise was no longer disabled because there had been medical improvement in the condition underlying her initial disability determination. Cross-motions for summary judgment are pending. It is respectfully recommended that the Commissioner's Motion be granted, and that the Claimant's Motion be denied.

### II. REPORT

## A. BACKGROUND

On July 5, 1977, when she was thirteen years old, Wise was found disabled within the meaning of the Social Security Act ("The Act") as of June 16, 1977 due to a childhood behavioral disorder that equaled a listing. Following a continuing disability review, Wise was informed via notice dated August 16, 2004, that since the 1977 comparison point decision, her condition had improved to the extent that she was able to begin working immediately. She was told that her benefits would be discontinued in October 2004. Wise requested reconsideration of this decision. On February 5, 2005, a hearing took place before a Disability Hearing Officer. Wise attended and gave testimony. In a decision dated February 22, 2005, the Hearing Officer concluded that there had been improvement in Wise's behavioral disorder and that Wise's other impairments did not render her disabled. (Tr. 36). He found that Wise was capable of performing light unskilled work. (Tr. 43).

Wise requested reconsideration of the Hearing Officer's decision, and, on November 29, 2005, a hearing took place before an Administrative Law Judge ("ALJ") in Pittsburgh, Pennsylvania. Wise, who was represented by an attorney and a certified legal intern, testified, as did a vocational expert. At the time of the hearing, Wise was forty-three years old with a GED obtained in a special education setting. She was married and living with her husband and two minor children, one of whom suffered from cerebral

palsy. The household also included Wise's eighteen year old son from a previous marriage who had been diagnosed with a bipolar disorder.(Tr. 312 ). She had never worked or received job skill training. (Tr.279).

Wise testified that she was five feet seven inches tall and weighed 314 pounds. She complained of edema and high blood pressure and stated that in order to relieve the swelling in her legs, her doctor advised that she "sit several times a day with [her] feet up for about 45 minutes to an hour." (Tr. 315). Wise alleged, too, that she suffered from bouts of celluitis - a burning infection of the skin. The first occurrence was in 2003, but she had experienced problems more than once since August 2004. (Tr. 318).

Wise required treatment for asthma, and regularly used an albuterol inhaler and Advair. An episode could be triggered by temperature extremes or by exhaustion. She testified that her asthma attacks had been severe enough to require her to visit her doctor, but not a hospital emergency room. She had never been prescribed a nebulizer, and was typically able to control an attack with an inhaler at home. Wise admitted that she smoked about a half pack of cigarettes each day.

Wise also complained of arthritis in her knees, stating that it caused her to experience pain and burning. She could grocery shop for about thirty minutes before she was forced to sit. (Tr.

323). Stairs were difficult to negotiate, and her doctor had prescribed a "potty chair" for her to keep on the lower level of her home where there was no toilet. ( Tr. 324). Arthritis also affected her hands, causing them to cramp. This condition adversely affected her ability to perform small motor skills such as playing cards or writing. Wise claimed that her hips and back were also affected by arthritis, making it painful for her to walk, sit, stand, and sleep. (Tr. 326-27). She may have suffered some damage to a disc. (Tr. 331). She became exhausted easily, and slept about one hour every afternoon. She napped in part, too, to escape the excruciating pain. (Tr. 329).

She could cook, dust, do dishes and laundry with help from her husband but only with frequent breaks. (Tr. 328). She lacked the concentration to read for more than five minutes and could not finish reading a book to her children because her mind wandered. Id. Dyslexia contributed to her reading difficulty.

Wise also described her history of depression, stating that she had suffered episodes as a child. She had not been depressed recently, although her attorney directed the ALJ's attention to a statement by Wise's treating physician who opined that returning to work could trigger a relapse.

Based on the evidence adduced at the hearing and the supporting medical records, the ALJ concluded, in an opinion dated March 18, 2006, that Wise's behavior disorder - the basis for the

1977 disability determination – had improved to the point where it no longer prevented her from engaging in substantial gainful activity. The ALJ then concluded that despite a combination of physical impairments that were "severe", she retained the residual functional capacity to perform "sedentary work, not involving exposure to pulmonary irritants; which is simple, routine and repetitive; and does not require the operation of foot controls, climbing, crawling, kneeling, balancing, or prolonged reading or writing." (Tr. 14-15). Relying on answers to hypothetical questions posed to a vocational expert, the ALJ found that work consistent with Wise's residual functional capacity existed in substantial numbers in the national and local economies. Based on these findings, he found that the cessation of benefits was appropriate.

Wise requested review of the ALJ's decision. On August 11, 2006, the Appeals Council affirmed the findings of the ALJ, making the ALJ's decision the final decision of the Commissioner. This timely appeal followed.

### B. **STANDARD OF REVIEW**

The Act limits judicial review of the Commissioner's final decision regarding benefits to these questions – whether the factual findings are supported by substantial evidence, Brown v. Brown, 845 F.2d 1211, 1213 (3d Cir. 1988), and whether the correct law was applied. Coria v. Heckler, 750 F.2d 245, 247 (3d Cir.

1984).

## C. The ALJ's Opinion

### 1. The Analytical Framework

The Benefits Review Act of 1984, 42 U.S.C. § 423(f) U.S.C. § 423(f)(1) provides that a recipient may be deemed ineligible for benefits if it is determined that his or her disability has ceased. That determination must be supported by substantial evidence of medical improvement and the claimant must be able to engage in substantial gainful activity. The provisions of 20 C.F.R. § 416.994(b)(5) provide a sequential multi-step inquiry applicable to termination decisions.[1] If, at any point, there is

---

[1] The implementing regulations require that the termination analysis be conducted with reference to the following questions: 1) Does the claimant have an impairment or combination of impairments which meets or equals the severity of an impairment listed in Appendix 1? If so, the disability is continuing; 2) Has there been medical improvement - i.e. has there been a change in the symptoms, signs, and/or laboratory findings associated with the impairment? If there has not been a decrease in medical severity, there is no medical improvement; 3) If there has been medical improvement, is it associated with the ability to do work - i.e. has there been a decrease in the severity of the impairment(s) identified at the time of the most recent comparison point and an increase in the functional capacity to do basic work activities? 4) If there has been no medical improvement or if the medical improvement is not related to the ability to do work, do any of the listed exceptions to medical improvement apply? If none of the exceptions specified applies, termination is improper; 5)If there has been medical improvement relating to the ability to do work, or if one of the specified exceptions applies, is the combination of current impairments severe? If not, the disability has ended; 6) If current impairments are severe, can the claimant return to past relevant work? If the answer is yes, the disability has ended; 7)If the claimant cannot return to past relevant work, is she able to perform other substantial gainful activity? If yes, disability has ended. *See* Griego v. Sullivan, 940 F.2d 942, 944 n.1 (5th Cir. 1991)(applying termination of benefits criteria in context of disability insurance benefits, 20 C.F.R. 404.1594).

sufficient evidence to support a finding that the claimant is still unable to engage in substantial gainful activity, the inquiry ends, and benefits may be continued. The ALJ listed these sequential steps and the applicable exceptions, and discussed each of them with reference to the record evidence. His analysis ended at Step Seven when he concluded that Wise was capable of performing substantial gainful activity and that jobs accommodating her residual functional capacity were available in the national and local economies.

### 2. Allegations of Error

#### a. Misapplication of a Relevant Listing

Wise challenges the ALJ's finding, at Step One of the analysis, that she did not suffer from a listed mental impairment. Specifically, she argues that the ALJ failed to accord controlling weight to the opinion of her treating physician, Dr. Judith Kliber, and, as a result, erred in concluding that Wise did not have a mental impairment meeting or equaling the listing set out at 20 C.F.R., Subpart P, Appendix 1, §12.04.(C)(2).[2] This listing provides, in pertinent part, as follows:

> C. Medically documented history of a chronic
> affective disorder of at least 2 years' duration
> that has caused more than a minimal limitation
> of ability to do basic work activities, with

---

[2] Because this allegation of error is limited to the ALJ's evaluation of the evidence regarding Wise's mental impairment, the court does not discuss the evidence bearing on Wise's physical complaints.

> symptoms or signs currently attenuated by
> medical or psychosocial support, and one of the
> following:
>
> 2. A residual disease process that has resulted
> in such marginal adjustment that even a minimal
> increase in mental demands or change in the
> environment would be predicted to cause the
> individual to decompensate.

(Tr. 19). According to the claimant, Dr. Kliber, who had treated her for about four years, provided evidence sufficient to sustain a finding of disability. In correspondence dated November 15 2005, and directed to "whom it may concern," Dr Kliber addresses Wise's symptoms of depression as follows:

> The patient's emotional limitations include
> a history of depression which has been in
> remission for a number of years. Currently,
> she is the caretaker for her family in which
> there are children with special needs. To
> reinstate the patient in the work force would
> destabilize the home environment and put a
> severe stress on Mrs. Wise, which might be a
> trigger for a relapse of Major Depression.

(Tr. 236). On November 29, 2005, Dr. Kliber wrote a second letter stating that "based on her long treatment relationship with Mrs. Wise," she was "certain that reinstating her in the workforce would destabilize the home environment, which would put a severe stress on her." (Tr. 274). In her medical opinion, this would "very likely trigger a relapse of Major Depression." Id.

The ALJ found that Dr. Kliber's letters, in the context of

the record as a whole, did not establish that Wise suffered from a mental impairment within the meaning of Section 12.04(C)(2). He concluded that Kliber's statements predicting the future were irrelevant and speculative, and declined to grant them controlling weight. He also concluded, however, that Kliber's statements were inconsistent with other medical evidence in the record.

In finding that Wise did not suffer from the listed mental impairment, the ALJ relied first on a Psychiatric Review Technique form completed by Marella C. Link, Ph.D. on July 28, 2004. Dr. Link concluded that Wise suffered from a learning disability and from a major depressive disorder, now in remission. She found that these impairments did not meet or equal a relevant listing. According to Dr. Link, medical improvement had occurred, and Wise was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairments." (Tr. 238). The ALJ cited Dr. Link's finding that Wise suffered no more than a mild restriction in her activities of daily living, and not more than moderate difficulties maintaining concentration, persistence, or pace. (Tr. 17).

The ALJ also referred to the consultative examination conducted in April 2004 by psychologist Kerry Brace. Brace wrote that Wise did not report "any symptoms of emotional disturbance" (Tr. 207), and that the main obstacle she faced was not being able to spell or work with numbers. Id. Wise told Dr. Brace that she

had a history of depressive disorder, but had not had an episode in more than two years. (Tr. 208). She reported that there was typically a two year interval between depressive episodes, but occasionally they occurred twice in a year. "The longest they have ever lasted is two months, and usually they are less than that." Id. Her current medications during that time span did not include psychotropic drugs. Dr. Brace did not note evidence of mood, thought, impulse control, or affect disorders. Nor did the claimant demonstrate problems with remote memory. Dr. Brace diagnosed Wise with major depressive disorder, recurrent, in full remission, and a learning disorder, not otherwise specified. (Tr. 211).

According to Dr. Brace, Wise's history established a "fairly likely possibility" that she would suffer a recurrence of depression. Id. Dr. Brace found that Wise should be capable of managing funds competently, and that she did "most of the household chores" with help from her husband. (Tr. 212). "She does the cooking, but cannot read recipes adequately. She does most of the laundry, loads the dishwasher, runs the vacuum, and cleans the bathroom." Id. She reported that she would shop with her spouse and could write checks as long as her husband helped with spelling and kept the register. Id. She was able to socialize without problems, and her persistence had a duration of "approximately one hour." Id.

Dr. Brace concluded that in a non-depressed state, Wise had moderate difficulty understanding, remembering, and carrying out short simple instructions, marked difficulty with detailed instructions, and no difficulty making judgment on simple work-related decisions. The doctor did not find that she would have difficulty interacting with the public, supervisors or co-workers. Brace noted that Wise did have moderate difficulty responding appropriately to pressure and change, writing that stress could contribute to recurrence of a depressive episode, and could thus affect her reliability. (Tr. 13-14).

On June 8, 2004, state agency medical consultant, Veena Dahr, M.D. examined Wise, and did not report any conduct relevant to a behavioral or emotional disorder, other than the following: "I said, what is the reason for your emotional disturbance, and she answered by saying that, 'My mother said I'm emotionally disturbed.'" (Tr. 216).

On June 17, 2004 K. Loc Le, M.D. also a state agency medical consultant, performed a physical assessment of Wise's residual functional capacity. Dr. Le did not find that Wise was limited in performing activities of daily living. She was able to care for herself and her husband, and performed household duties including cooking, cleaning, and washing clothes.

Finally, the ALJ commented on Dr. Kliber's notes. These notes, entered over the period dating from February 2003 to

November 2005, indicate that Wise had a history of major depression, but do not show that she complained of depression, or that she sought or was referred to a mental health specialist at any time during that period. She did not seek and was not given depression-related medication, was not hospitalized for treatment of depression, and did not describe any decompensation episodes. The only specific comments relating to Wise's mental condition appear in the letters written after the cessation of benefits.

After reviewing this evidence, the ALJ concluded that the record failed to show that Wise had suffered "any episodes of decompensation of extended duration during the period pertinent herein, or a severe mental impairment lasting for two or more years with signs and symptoms continuing despite medication or psychosocial support." Id.

The court, too, has reviewed the record evidence. It sympathizes with Wise, who, in facing the prospect of entering the workforce for the first time, faces a difficult transition. Nonetheless, the court is constrained to agree with the ALJ; *i.e.,* that the evidence does not support the applicability of the listing at 12.04(C)(2).

It is undisputed that Wise has been diagnosed with a history of major depression and that all of the relevant evidence available to the ALJ showed that this condition was in remission. Wise contends, however, that evidence provided by her treating

12

physician established that the depression was likely to recur if she entered the work force, and that this evidence should have been controlling. She further contends that the evidence was sufficient to place her mental impairment squarely within the parameters of the 12.04(C)(2) listing. The court disagrees. Even accepting, arguendo, that Dr. Kliber's statements were entitled to controlling weight, they fail to show that Wise's history of depression satisfies the criteria set out in 12.04(C)(2).

As the Commissioner points out, whether a condition occurs or worsens after a disability determination is made is typically irrelevant. See e.g., <u>Matullo v. Brown</u>, 926 F.2d 240, 244 (3d Cir. 1990). The listing at Section 12.04(C)(2) is peculiar because in that provides for a *prediction* regarding the effect of a change in mental demands or environment imposed upon a claimant. Dr. Kliber did make one prediction in the materials submitted to the ALJ. In a letter dated November 15, 2005, she predicted that Wise's entrance into the work force "could . . . [cause] severe stress . . . which might be a trigger for a relapse of Major Depression." (Tr. 256). She made an almost identical prediction in a letter dated the same day as the administrative hearing – November 29, 2005. She wrote then that entering the work force would "very likely" trigger a relapse. (Tr. 274).[3] The information in these

---

[3] Wise submitted to the Appeals Council two additional items of correspondence generated by Dr. Kliber. In an email dated March 28,

13

letters, even if considered in conjunction with a similar statement by Dr. Brace, is not sufficient to satisfy the requirements of listing 12.04(C)(2). The listing has several components: 1) a medically documented history of a chronic affective disorder of at least two years' duration; 2)the disorder must have caused more than a minimal limitation of ability to do basic work activities; 3)the claimant must exhibit signs and symptoms currently attenuated by medication or psychosocial

---

2006, Dr. Kliber wrote that Wise's "condition had been in remission until around November 2005 when she needed to begin taking anti-depressant medication again for stress/anxiety and depressive symptoms. At that time she had suicidal ideation, but was not actively suicidal." (Tr. 288). In a letter dated April 25, 2006, Dr. Kliber stated:[Wise] had a relapse of her major depression in December 2005 and was placed back on anti-depressant medication. This depression can be described at [sic] a reactive depression in that, at least in part, it is related to the stress that Ms. Wise is undergoing through this legal process and risk of losing her disability coverage. As I have stated before, I am concerned that her depression could continue, and perhaps worsen, if she is forced to re-enter the workforce." (Tr. 289). In applying the substantial evidence standard, the court is not permitted to take into consideration evidence that was not before the ALJ. Matthews v. Apfel, 239 F.3d 589, 593-95 (3d Cir. 2001). Wise has not requested remand and, in any event, the requisites for remand set out in 42 U.S.C. Section 405(g) are not present in this case.

   Section 405(g) establishes that in order to warrant a remand based on "new evidence" the evidence must be "material." The materiality standard is not met absent a possibility that the new evidence would have altered the outcome of the Secretary's determination. See Reefer v. Barnhart, 326 F.3d 376, 381 n.3. (3d. Cir. 2003). Wise does not address the fact that the Appeals Council has already made the materiality determination. The court does not find any reason to disturb the Council's conclusion. The additional information from Dr. Kliber does not affect the applicability of the listing at 12.04(C)(3). It fails to address the severity of Wise's depression, or her response to medication. It does not suggest that Wise is unable to perform basic work activities or describe how the condition has affected her life. The primary thrust of these letters, as was the case with the earlier correspondence, is what "could" or "perhaps" happen if Wise goes to work.

support; and 4) a residual disease process that has resulted in marginal adjustment such that even a minimal increase in mental demands or change in environment would be predicted to cause the claimant to decompensate.

The record establishes that Wise does indeed have a documented medical history of a chronic affective disorder and that she has had intermittent periods of depression in the past - the last one in 2003, which was prior to the hearing. The depression typically lasted about a month. The record is devoid of data indicating whether these episodes would have caused more than minimal interference with basic work activities, or if they were effectively controlled by medication and/or therapy. Also, the record before the ALJ does not show that Wise ever received either medication or therapy. Nonetheless, the court will assume, for argument purposes, that Wise has established the first two prongs of listing 12.04(C)(2). Prongs three and four, however, are problematic. Dr. Kliber's statements do not establish that Wise exhibited "signs and symptoms *currently attenuated (*or any signs and symptoms ever treated*) by medication or psychosocial support."* Id. (Emphasis and parenthetical statement added). Wise has also failed to establish that she was impaired by a residual disease process that resulted in a marginal adjustment at any time relevant to the decision regarding the cessation of her benefits. Dr. Kliber's letters state that Wise had a history of depression

"which ha[d] been in remission for several years," and that she had been able to care for her family, which included two children with special needs - a young child with cerebral palsy and a teenager with a bipolar disorder. Wise's years in remission and her ability to serve as a care giver in what can only be described as a demanding situation are not suggestive of "marginal adjustment." Her ability to cope in this rather delicate situation over a sustained period of time does not indicate that minimal changes in the demands placed upon her were reasonably likely to cause Wise to decompensate. In fact, Dr. Kliber did not express the opinion that even the major demand of entering the workforce would cause Wise to decompensate. She said, instead, that going to work *might* trigger a relapse into depression. That said, not all episodes of depression are severe enough to preclude a claimant from working. *See e.g.*, Charlton v. Barnhart, 398 F. Supp. 295 (D. Del. 2005).

In sum, the court is convinced that there is substantial medical and other evidence in the record to support the ALJ's finding that Wise was not disabled within the meaning of 12.04(C)(2). His failure to give controlling weight to the opinion of Dr. Kliber with respect to the future harm Wise might suffer was adequately explained. Even had the ALJ given controlling weight to Dr. Kliber's prediction, her statements were insufficient to establish that Wise had an impairment that met or

16

was equivalent to the listing set out at 12.04(c)(2). The ALJ's finding with respect to the listing is supported by substantial evidence.

### b. <u>Failure to Credit Subjective Complaints of Pain</u>

According to Wise, the ALJ failed to point to evidence in the record supporting his finding that her account of pain and its limiting effects were only partially credible.

Contrary to Wise's allegation, the ALJ did not dismiss Wise's complaints of pain, nor did he conclude that there was no medical evidence documenting the genesis of that pain. Instead, the ALJ addressed -with detailed record references- the evidence supporting his conclusion that Wise's physical impairments, including pain, were not severe enough to preclude sedentary work. The ALJ cited first the June 2004 findings of consulting physician K. Lock Le who concluded that Wise was capable of performing work at a medium exertional level. (Tr. 18). A June 2004 consultative examination performed by Dr. Dhar was unremarkable but for a notation that Wise was obese and had lost reflexes in her lower extremities as a result of her weight. Although Wise complained of pain in her back and knees, Dr. Dahr wrote that she was taking no pain medications other than Tylenol. <u>Id</u>. The ALJ noted that X-rays performed in August 2004 showed minimum to moderate degenerative changes in the claimant's knees, and November 2004 films of her spine showed only mild degenerative changes. <u>Id</u>. Although Wise

contends that she complained of pain to Dr. Kliber, the record reflects that she was never prescribed medication stronger than Advil and Motrin. There also is no evidence that Wise was referred to physical therapy, an orthopedist, a pain specialist or that she ever reported to a hospital emergency room for pain relief. Remarkably, Wise's complaints of pain never gave Dr. Kliber particular cause for concern, because her treatment notes are devoid of entries describing the nature and frequency of the pain, or its impact on the claimant's activities.

As a general rule, courts must defer to the ALJ's credibility determination, given his or her unique opportunity to assess the witness's demeanor. *See, e.g.,* Atl. Limousine, Inc. v.NLRB, 243 F.3d 711, 718 (3d Cir.2001). This is especially true where, as here, the witness described her pain and its consequences in detail; the ALJ then anchored his credibility determination to the specifics of the medical evidence. *See, e.g.*, Reefer v. Barnhart 326 F.3d 376 (3d Cir. 2003). The court has independently and carefully reviewed the record, and is convinced that there is substantial evidence to support the ALJ's credibility determination.

### III. CONCLUSION

Because the decision of the ALJ was supported by the evidence and was consistent with applicable law, the Motion for Summary Judgment filed by the Commissioner (Doc.15) should be GRANTED, and

the Motion for Summary Judgment filed by Pauleen Wise (Doc. 13) should be DENIED.

In accordance with the Magistrate's Act, 29 U.S.C. § 636 (b)(1)(B), 636 (b)(1)(b) and (c), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by July 2, 2007. Responses to objections are due by July 12, 2007.

June 14, 2007

/S/ Francis X. Caiazza
Francis X. Caiazza
U.S. Magistrate Judge

cc:

Counsel of Record
Via electronic mail

___
___